UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

FREDDY KAPLAN,

                              Plaintiff,

              v.

NEW YORK STATE DEPARTMENT OF
LABOR, ROBERTA REARDON *as
Commissioner,* KATHY DIX, MICHAEL
PAGLIALONGA, and PICO BEN-AMOTZ
*in their individual capacities as aiders
and abettors,*

                              Defendants.

------------------------------------------------------------

18 Civ. 3629 (KPF))

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge[1]:

    This litigation arises from a workplace dispute at the New York State

Department of Labor ("DOL").  Plaintiff Freddy Kaplan claims that one of the

junior associates he supervised, J.R. Pichardo, made an anti-Semitic statement

directed at him, and harassed two female associates that Plaintiff supervised.

Plaintiff made a complaint about Pichardo's actions to his superiors.  But,

according to Plaintiff, after first receiving confirmation from his superiors that

the incidents happened, he was later accused of fabricating the incidents and

was subsequently terminated.  Plaintiff contends that his termination was a

form of retaliation.

    Plaintiff filed the instant action against DOL, DOL Commissioner Roberta

Reardon, DOL General Counsel Pico Ben-Amotz, and DOL Deputy Counsel

---

[1]    Anwar Akrouk, a rising second-year student at the University of California Berkeley
       School of Law and an intern in my Chambers, provided substantial assistance in
       researching and drafting this Opinion.

Michael Paglialonga (collectively, the "State Defendants"), as well as a former DOL employee, Kathy Dix (together with the State Defendants, "Defendants"). In it, Plaintiff alleges that DOL created a hostile work environment and engaged in illegal retaliation when it terminated him and, further, that the individual Defendants Dix, Paglialonga, and Ben-Amotz aided and abetted that retaliation. Defendants have moved to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants Defendants' motion to dismiss all state and local law claims for lack of jurisdiction, but denies the motion to dismiss Plaintiff's federal claims.

## BACKGROUND[2]

### A. Factual Background

### 1. The Parties

Plaintiff is a Jewish resident of Manhattan who, at the time of the events discussed herein, was in his fifties. (Am. Compl. ¶¶ 7, 23). Plaintiff was an employee at Defendant DOL, which is responsible for "enforcing state labor

---

[2]  The Court draws the facts in this section from the Amended Complaint ("Am. Compl." (Dkt. #68-1)). By letter dated June 26, 2019 (Dkt. #68), Plaintiff informed the Court that the prior filing of the Amended Complaint (Dkt. #51) was missing its fourth page. On June 27, 2019, the Court accepted the revised version of the Amended Complaint, which was identical to the prior version beyond the inclusion of the missing page. (Dkt. #69).

For convenience, the Court refers to the Memorandum of Law in Support of the State Defendants' Motion to Dismiss the Amended Complaint as "NY Br." (Dkt. #63), the Memorandum of Law in Support of Defendant Dix's Motion to Dismiss the Amended Complaint as "Dix Br." (Dkt. #61), and Plaintiff's Combined Memorandum of Law in Opposition to the Motions to Dismiss as "Pl. Opp." (Dkt. #64). Additionally, the Court refers to the Reply Memorandum of Law in Support of the State Defendants' Motion to Dismiss the Amended Complaint as "NY Reply" (Dkt. #65), and the Reply Memorandum of Law in Support of Defendant Dix's Motion to Dismiss the Amended Complaint as "Dix Reply" (Dkt. #67). The Court also refers to the Declaration of Michael Berg in Support of the State Defendants' Motion to Dismiss as the "Berg Decl." (Dkt. #62).

laws, rules, and regulations." (*Id.* at ¶¶ 8, 10).  DOL is a state agency headquartered in Albany, New York.  (*Id.* at ¶ 9).  Defendant Roberta Reardon is the appointed Commissioner of DOL and is sued in her official capacity.  (*Id.* at ¶ 13).  Defendants Kathy Dix, Michael Paglialonga,[3] and Pico Ben-Amotz are all residents of New York State and were employees of DOL during the relevant period.  (*Id.* at ¶¶ 16-21).  They are sued in their individual capacities.  (*Id.*).

## 2. Plaintiff's Interactions with Pichardo

Plaintiff has been an attorney licensed to practice in the State of New York since 1989.  (Am. Compl. ¶ 24).  He began his employment at DOL as a Senior Attorney, where he "received positive performance evaluations and incremental pay raises."  (*Id.* at ¶¶ 26, 27).  In 2015, Plaintiff worked in DOL's Division of Labor Standards and Bureau of Public Works.  (*Id.* at ¶ 28).  There, Plaintiff supervised three associate attorneys, one male and two females.  (*Id.* at ¶ 29).  The male associate, J.R. Pichardo, allegedly "frequently obstructed Plaintiff's directives and refused both his direction and training," while also disrupting the workplace environment.  (*Id.* at ¶¶ 30, 31).  Pichardo, as part of these alleged disruptions, harassed the other two female attorneys "in a misogynistic and derogatory manner."  (*Id.* at ¶ 32).  Further, Plaintiff alleged that in November 2015 Pichardo made a comment in Plaintiff's presence about "Jewing someone down."  (*Id.* at ¶ 33).  Plaintiff objected to the anti-Semitic statement and told Pichardo that this statement "was inappropriate in the

---

[3]     Defendant Michael Paglialonga is identified as "Michael Paglialongo" in the Amended Complaint and in Plaintiff's filings.  The Court uses the correct spelling of his name in this Opinion.

workplace." (*Id.* at ¶ 34). At some later point, Plaintiff learned that Pichardo referred to Plaintiff in the workplace more than once as a "Jew lawyer." (*Id.* at ¶ 35).

### 3. Plaintiff's Reporting and the Subsequent Investigations

After learning of Pichardo's conduct, Plaintiff telephoned his supervisor, Defendant Dix, and "lodged complaints about Pichardo's daily harassment of his peers, his inappropriate behavior, and his incessant anti-Semitic comments." (Am. Compl. ¶ 36). Paglialonga, DOL's deputy counsel, was allegedly present for this telephone conversation. (*Id.* at ¶¶ 19, 37). Based on the information discussed in the meeting, a complaint was filed on Plaintiff's behalf. (*Id.* at ¶ 38). Plaintiff states that he never received a copy of this complaint or documentation regarding its creation. (*Id.* at ¶ 39).

In or around late January 2016, Plaintiff was interviewed by DOL's Human Resources division. (Am. Compl. ¶ 40). After the interview, Plaintiff was provided with a letter in which DOL confirmed that Pichardo had made comments that were anti-Semitic and had created a hostile work environment. (*Id.*). However, Plaintiff alleges that the letter indicated that such behavior was acceptable and that no action would be taken against Mr. Pichardo. (*Id.*).

### 4. The Alleged Fabrication and Plaintiff's Termination

In September 2016, Plaintiff was reassigned to the Bureau of Public Works. (Am. Compl. ¶ 41). The following month, in October 2016, Plaintiff travelled to Albany for work and met with Dix. (*Id.* at ¶ 43). In late April 2017, Jim Rogers, DOL's Deputy Commissioner, inquired of Plaintiff as to whether he

(Plaintiff) had invented the above-described claims against Pichardo. (*Id.* at ¶ 44). Plaintiff denied fabricating the allegations. (*Id.* at ¶ 45). In June 2017, John Dorman met with Plaintiff, and claimed that Plaintiff had told Dix in their October 2016 meeting that he had fabricated the allegations against Pichardo in an effort to get him terminated from his job. (*Id.*).[4] Plaintiff denied this and informed Dorman of the letter that he had received around January 2016, which letter confirmed that Pichardo had made the anti-Semitic statements. (*Id.* at ¶ 48).

Plaintiff states that he continued to perform his job duties satisfactorily. (Am. Compl. ¶ 49). Despite this, on October 10, 2017, Paglialonga and Ben-Amotz notified Plaintiff that he should resign, or he would be terminated from his position. (*Id.* at ¶ 50). On October 16, 2017, Plaintiff informed Paglialonga and Ben-Amotz that he refused to resign, and he and was subsequently terminated from his position at DOL. (*Id.* at ¶ 52). Plaintiff alleges that he faced discrimination at his workplace on the basis of his religion and, further, that he was terminated from his employment in retaliation for reporting discrimination against both himself and his colleagues. (*Id.* at ¶ 54).

## B. Procedural History

Plaintiff filed his initial complaint in this action on April 24, 2018. (Dkt. #1). On August 21, 2018, the State Defendants requested leave to file a motion to dismiss. (Dkt. #38). On August 28, 2018, Defendant Dix requested leave to

---

[4] The Amended Complaint does not indicate Dorman's job title.

file a motion to dismiss. (Dkt. #41). On September 25, 2018, the Court held a status conference and granted leave for Plaintiff to amend the complaint. (Dkt. #49). On October 29, 2018, Plaintiff filed an amended complaint. (Dkt. #51). On December 7, 2018, Dix and the State Defendants filed separate motions to dismiss and supporting declarations. (Dkt. #58-63). On January 7, 2019, Plaintiff filed his combined opposition to the motions to dismiss (Dkt. #64), and on January 18, 2019, the State Defendants and Dix filed their respective reply submissions (Dkt. #65-67).

Because Plaintiff's Amended Complaint includes 15 claims for relief (Am. Compl. ¶¶ 55-126), the Court briefly describes which claims are attributed to which Defendants. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964 against his employer, DOL, for religious discrimination and retaliation. (*Id.* at ¶¶ 56, 71, 83).[5] Plaintiff brings claims under the New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the "NYCHRL") against DOL and Reardon for religious discrimination and retaliation. (*Id.* at ¶¶ 61, 66, 76, 79, 88, 93).[6] Finally, Plaintiff brings claims against Dix, Paglialonga, and Ben-Amotz for aiding and abetting in DOL's

---

[5]     In his opposition brief, Plaintiff drops all Title VII claims against Commissioner Reardon that were originally in the Amended Complaint. (Pl. Opp. 8).

[6]     In the Amended Complaint, Plaintiff's claim for religious discrimination under the NYCHRL is alleged against Defendants generally, unlike the remaining claims for which specific defendants are identified. (*See* Am. Compl. ¶ 66). However, in an August 24, 2018 letter to the Court, Plaintiff specified that the religious discrimination claim was not brought against Defendants Ben-Amotz and Paglialonga. (*See* Dkt. #40). Plaintiff likewise makes no attempt to argue that that this claim is alleged against Dix. (*See* Dix Reply 3 (arguing that Plaintiff has abandoned this claim against Dix)). The Court understands that this claim is brought solely against Reardon and DOL, in the same way as the religious discrimination claim brought pursuant to the NYSHRL.

discriminatory conduct, in violation of the NYSHRL and the NYCHRL. The Court begins with the state and local law claims, as Defendants challenge the Court's jurisdiction over these claims. The Court then turns to Plaintiff's Title VII claims.

**DISCUSSION**

**A. The Eleventh Amendment Deprives the Court of Jurisdiction over Plaintiff's State and Local Law Claims**

    **1. Applicable Law**

        **a. Motions to Dismiss under Rule 12(b)(1)**

The State Defendants principally argue that this Court lacks jurisdiction to consider Plaintiff's state and local law claims against them due to sovereign immunity. They move under Rule 12(b)(1), which permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain* v. *Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "A plaintiff asserting

7

subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (quoting *Makarova*, 201 F.3d at 113).

### b.     State Immunity Under the Eleventh Amendment

The Eleventh Amendment "render[s] states and their agencies immune from suits brought by private parties in federal court." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004).  Further, the "Eleventh Amendment forecloses ... the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State." *Cnty. of Oneida, N.Y.* v. *Oneida Indian Nation*, 470 U.S. 226, 251 (1985).  More specifically, the Supreme Court has admonished lower courts that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.  A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst State School and Hospital* v. *Halderman*, 465 U.S. 89, 120 (1984).  In addition to this, agents of the state acting in their official capacity are also immune under the Eleventh Amendment.  *Gan* v. *City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

### 2.     Plaintiff's Religious Discrimination and Retaliation Claims under the NYSHRL and the NYCHRL Against DOL and Reardon Are Barred by the Eleventh Amendment

Plaintiff brings six different religious discrimination and retaliation claims under the NYSHRL and the NYCHRL against DOL and Commissioner Reardon.  These two parties, however, are immune from suit under the Eleventh Amendment, and the claims against them are therefore dismissed.

8

The State Defendants' arguments for dismissal of these counts are straightforward: DOL is a state agency, and Commissioner Reardon is a state official sued in her official capacity. (*See* NY Br. 8-11). A state and its agencies are immune from suits brought by private parties in federal court, unless Congress unequivocally expresses its intent to abrogate that immunity or a state waives its immunity. *See In re Charter Oak Assocs.*, 361 F.3d at 765. The bar applies to officers of the state as well sued in their individual capacities. *See Gan*, 996 F.2d at 529. "The State of New York has not consented to suit in federal court through NYSHRL." *Jackson* v. *N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 226 (S.D.N.Y. 2010). With particular respect to claims under local law, such as the NYCHRL, the Second Circuit has made plain that "[t]he City of New York does not have the power to abrogate the immunity of the State, and … [has] found no evidence that the State has consented to suit in federal court under the NYCHRL." *Feingold* v. *New York*, 366 F.3d 138, 149 (2d Cir. 2004).

Plaintiff responds that the Court has power to hear these claims under 28 U.S.C. § 1367(a), which grants supplemental jurisdiction to federal courts over state law claims. (*See* Pl. Opp. 6-8). Plaintiff reasons that because Congress has abrogated sovereign immunity with respect to Title VII claims, and thus that the Court has jurisdiction to hear Plaintiff's federal claims, the remainder of his claims should be heard at the same time in the interests of judicial economy. (*See id.* at 7-8 ("In the absence of this Court exercising supplemental or pendent jurisdiction over Mr. Kaplan's NYSHRL and NYCHRL

claims …, he will be forced to file a separate, parallel proceeding against these parties in state court. This second suit will invariably be duplicative … on the same issues of fact.")). While Plaintiff's argument may well be true, it overlooks the fact that the Supreme Court has decreed this precise result. In *County of Oneida*, the Supreme Court held: "The Eleventh Amendment forecloses … the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State." 470 U.S. at 251. It subsequently confirmed that "§ 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants." *Raygor* v. *Regents of Univ. of Minnesota*, 534 U.S. 533, 541-42, (2002). And on the specific issue of judicial efficiency, the Court concluded that "considerations of policy cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State." *Pennhurst*, 465 U.S. at 122-23.

Plaintiff does not address these cases, but rather rests his arguments on case law that speaks generally to the broad goals of supplemental jurisdiction. (*See* Pl. Opp. 7-8). As the State Defendants rightly note (*see* NY Reply 3-4), there is an unbroken line of cases in which courts had dismissed NYSHRL and NYCHRL claims brought against the state and its officers as barred by the Eleventh Amendment, even where federal claims continued. *See, e.g.*, *Jackson,* 709 F. Supp. 2d at 226. Plaintiff offers no basis for a different outcome. As such, Plaintiff's NYSHRL and NYCHRL claims against DOL and Commissioner Reardon for discrimination and retaliation must be dismissed.

**3.    Plaintiff's Claims for Aiding and Abetting Violations of the NYSHRL and the NYCHRL Must Be Dismissed in the Absence of an Actionable Primary Violation**

As noted, Plaintiff pleads individual aiding and abetting claims under the NYSHRL and the NYCHRL against Defendants Dix, Paglialonga, and Ben-Amotz.  Generally speaking, Plaintiff alleges that each of these Defendants knew of the discrimination that Plaintiff faced and did nothing to address the discrimination or prevent the allegedly retaliatory firing.  (*See* Am. Compl. ¶¶ 99, 104, 109, 114, 119, 124).  Defendants argue that the dismissal of the primary state and local discrimination and retaliation claims necessitates dismissal of the correlative aiding and abetting claims.  (*See* NY Br. 11-13; Dix Br. 8-9).  The Court agrees that the dismissal of the primary claims requires dismissal of the aiding and abetting claims against Dix, Paglialongo, and Ben-Amotz.

Individual government employees may be held liable under the NYSHRL and the NYCHRL if they aid and abet illegal discriminatory practices.  *See* N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6).  However, the principle is firmly established in this District that liability under these statutes "must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor."  *DeWitt* v. *Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999).

In *Soloviev* v. *Goldstein*, a discrimination case against the City University of New York ("CUNY") and several of its individual employees, a sister court in this Circuit held that "because the claims [against CUNY] [we]re barred by the

Eleventh Amendment, Plaintiffs also [could not] state a claim against the Individual CUNY Defendants in their individual capacities as aiders and abettors." 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015) (collecting cases for this principle, including, *e.g.*, *Ren Yuan Deng* v. *N.Y. State Office of Mental Health*, No. 13 Civ. 6801 (ALC) (RLE), 2015 WL 221046, at *5 (S.D.N.Y. Jan. 15, 2015) (noting principal liability is a predicate for aider and abettor liability under both the NYSHRL and the NYCHRL)); *accord Ross* v. *State of New York*, No. 15 Civ. 3286 (JPO), 2016 WL 626561, at *3 (S.D.N.Y. Feb. 16, 2016); *Ardigo* v. *J. Christopher Capital, LLC*, No. 12 Civ. 3627 (JMF), 2013 WL 1195117, at *6 (S.D.N.Y. Mar. 25, 2013). The State Defendants argue that this line of cases requires dismissal of all the aiding and abetting claims. (*See* NY Br. 13).

Plaintiff's response is a largely irrelevant discussion of the merits of each Defendant's conduct. (*See* Pl. Opp. 18-20). As the State Defendants observe in reply (*see* NY Reply 5-6), Plaintiff's failure to address these arguments effectively concedes that the claims cannot survive. That is, Courts will normally deem a claim abandoned if a plaintiff fails to address or oppose a defendant's arguments requesting dismissal of that claim. *See, e.g.*, *Adams* v. *N.Y.S. Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (collecting cases). Even were the Court to consider Plaintiff's brief a response to Defendant's argument, the Court can no discern no basis to distinguish this case from those listed above. In sum, absent an actionable primary violation under the NYSHRL or the NYCHRL, the aiding and abetting claims against Dix,

Paglialonga and Ben-Amotz cannot survive. The Court therefore dismisses all claims for aiding and abetting.[7]

## B. Plaintiff's Title VII Claims Survive

Having dismissed the state and local law claims against Defendants as barred by the Eleventh Amendment, the Court consider the remaining claims under Title VII. Plaintiff has dropped all Title VII claims against Commissioner Reardon (*see* Pl. Opp. 8), so the sole remaining claims are those brought against DOL for a hostile work environment and retaliation. The State Defendants seek dismissal of these claims for failure to state a claim under Fed. R. Civ. P. 12((b)(6).

### 1. Motions to Dismiss Generally

#### a. Rule 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). Thus, "[t]o survive a

---

[7] This Court has previously recognized an open issue concerning whether "an individual can be held liable for aiding and abetting his own conduct giving rise to a claim under" the NYSHRL. *See Gorman* v. *Covidien, LLC*, 146 F. Supp. 3d 509, 522 (S.D.N.Y. 2015) (collecting cases). The law on this issue remains unsettled. *See Chau* v. *Donovan*, 357 F. Supp. 3d 276, 286 (S.D.N.Y. 2019) (pointing to "differing conclusions in this district over the extent to which an individual can be liable for aiding and abetting his own conduct"). However, Plaintiff does not allege this theory of liability in the Amended Complaint, and it is therefore not addressed further in this Opinion.

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### b. The Court's Consideration of Documents External to the Complaint

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the

complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "To be integral to a complaint, the plaintiff must have [i] 'actual notice' of the extraneous information and [ii] 'relied upon the documents in framing the complaint.'" *DeLuca* v. *AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Chambers,* 282 F.3d at 153).

"Merely mentioning a document in the complaint will not satisfy this standard," and the exception often applies where "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason — usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim — was not attached to the complaint." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). Moreover, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity[, relevance,] or accuracy of the document." *DiFolco*, 622 F.3d at 111 (quoting *Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

The State Defendants submitted a letter along with their brief. (*See* Berg Decl., Ex. A (the "August 16 Letter")). The letter, which is addressed to Plaintiff from DOL's Division of Equal Opportunity, states that DOL investigated Plaintiff's complaint regarding Pichardo and found insufficient evidence to conclude discrimination occurred, although a violation of DOL policies may

15

have occurred.  (*See id.*).  The State Defendants argue that this letter is the letter to which Plaintiff referred in his Amended Complaint (*see* Am. Compl. ¶ 40), and, therefore, the Court should consider it as integral to the complaint. (*See* NY Br. 19 n.6).  The Court cannot agree.

On the record before it, the Court does not have a sufficient basis to conclude that the August 16 Letter is the document referenced by Plaintiff in the Amended Complaint.  The relevant allegation is the following:  "[Plaintiff] received a letter confirming that Mr. Pichardo had made comments that were both anti-Semitic and created a hostile work environment, but, indicating that said behavior is acceptable at the DOL, no corrective action would be taken." (Am. Compl. ¶ 40).  In opposition, Plaintiff states that there is no basis to conclude the August 16 Letter is the letter he referenced.  (*See* Pl. Opp. 12-13). The Court agrees that the language is different, and the Amended Complaint recites no date that would allow the Court to confirm that this is the referenced letter.

While it seems unlikely to the Court that a different letter with a different message exists, the standard for consideration at the motion to dismiss stage is a strict one.  "[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  *Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).  Here, Plaintiff disputes that the letter he referenced is the August 16 Letter.  At the

motion to dismiss stage, the Court cannot make a finding on disputed facts that these letters are the same. The Court thus declines to consider the August 16 letter at this time.

### 2. Plaintiff Has Plausibly Alleged a Hostile Work Environment Claim Under Title VII

#### a. Applicable Law

To allege that a defendant created a hostile work environment, a plaintiff must plausibly allege harassment that was sufficiently severe and pervasive to alter the conditions of employment. *See Feingold* v. *New York*, 366 F.3d 138, 149-50 (2d Cir. 2004) (citing *Alfano* v. *Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). Episodic incidents are insufficient to demonstrate a hostile work environment under federal law. *See id.*; *Terry* v. *Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). Instead, "[t]he incidents complained of ... must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn* v. *City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (citation omitted); *see generally Rivera* v. *Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).

In evaluating "whether a plaintiff suffered a hostile work environment," a court "consider[s] the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d at 321 (citation omitted). "This standard has both objective and subjective

components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* The plaintiff must also allege "that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Summa* v. *Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (internal citations omitted)

### b. Plaintiff Has Adequately Alleged Pichardo's Offensive Conduct and DOL's Failure to Remediate

Plaintiff argues that Pichardo's anti-Semitic statements, "misogynistic rants," and refusal to follow Plaintiff's instructions and orders, taken together, meet the standard set by the courts for a hostile work environment under Title VII. (*See* Pl. Opp. 10). While Kaplan "personally overheard" Pichardo talk about "Jewing someone down," he also became aware of "incessant anti-Semitic comments [made] out[side] of his presence" by Pichardo. (*Id.* at 12 (internal citations and quotations omitted)). Furthermore, Plaintiff states that he had received a letter from DOL confirming that Pichardo had engaged in anti-Semitic behavior, but nonetheless declining to discipline him. (*Id.*). Plaintiff states that these facts demonstrate that he faced conduct severe or pervasive enough that a reasonable person would find it hostile or abusive, *see Littlejohn*, 795 F.3d at 321, and there is a basis for imputing this conduct to DOL, *see Summa*, 708 F.3d at 124.

The State Defendants respond that Plaintiff "fails to allege the kind of severe and pervasive harassment necessary to establish a hostile work

environment." (NY Br. 17-18). In this regard, they rest much of their argument on the allegation that Plaintiff only heard one anti-Semitic comment. (*Id.* at 18). However, Plaintiff specifically alleges that Pichardo made numerous other anti-Semitic comments to other employees outside Plaintiff's presence. (*See* Am. Compl. ¶¶ 35-36).[8] In other words, while Plaintiff only alleges one comment that he heard, he alleges many other, equally egregious comments made outside of his presence of which he became aware. (*Id.*). The Court finds that Plaintiff has adequately alleged that Pichardo "engage[d] in a steady barrage of opprobrious racial comments." *Schwapp* v. *Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotation marks and citations omitted). Accepting the allegations against Pichardo as true, the Court concludes that they could state a claim for a hostile work environment.

Alternatively, the State Defendants argue that the alleged comments by Pichardo cannot be imputed to DOL. (NY Br. 18-19). DOL argues that it listened to Plaintiff's complaint, investigated, and attempted to act to remedy the situation. (*Id.*). As discussed above, the Court declines to consider the August 16 Letter. Accepting the well-pleaded allegations of the Amended Complaint, Plaintiff reported the misconduct to his superiors, who declined to

---

[8]    The State Defendants also argue that Plaintiff's counsel's statements in court contradict the pleadings: "[Plaintiff's] Counsel stated: 'He heard one offensive comment, which, as a 50-year-old lawyer who lives in New York, we can all manage to somehow survive, and I get that.' Although the Amended Complaint refers to Mr. Pichardo's 'incessant anti-Semitic comments,', that conclusory label is entitled to no weight, as it is belied by the pleading's factual allegations and counsel's concession." (NY Br. 17). The Court does not consider the statements contradictory. Plaintiff alleged that he directly overheard one offensive comment. He alleged that he learned of the other, similarly offensive comments later.

remedy the situation. (Am. Compl. ¶ 40). To impute liability to an employer, Plaintiff must allege that "(i) someone had actual or constructive knowledge of the harassment, (ii) the knowledge of this individual can be imputed to the employer, and (iii) the employer's response, in light of that knowledge, was unreasonable." *Duch* v. *Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009). The State Defendants do not dispute the first or second of these elements, and accepting Plaintiff's representations as true, the third element is satisfied. Plaintiff has stated that DOL informed him that Pichardo's anti-Semitic conduct was not a basis for corrective action. (Am. Compl. ¶ 40). The Court concludes that such a response, assuming the truth of Pichardo's continuous anti-Semitic comments, would be unreasonable. Accordingly, Plaintiff has adequately stated that a hostile work environment existed and can be imputed to Defendant. Plaintiff's hostile work environment claim survives.

### 3. Plaintiff Has Plausibly Alleged an Unlawful Retaliation Claim Under Title VII

#### a. Applicable Law

To state a claim for retaliation, Plaintiff must plausibly allege four factors: (i) the employee engaged in protected activity by opposing a practice made unlawful by Title VII; (ii) the employer was aware of that activity; (iii) the employee suffered adverse employment actions; and (iv) there was a causal connection between the protected activity and the adverse action. *Galdieri-*

*Ambrosini* v. *Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

Indeed,

> [a]t the pleading stage, "the allegations in the complaint
> need only give plausible support to the reduced *prima
> facie* requirements that arise under *McDonnell Douglas*
> in the initial phase of a Title VII litigation." [*Littlejohn*,
> 795 F.3d] at 316. "[F]or a retaliation claim to survive a
> motion for judgment on the pleadings or a motion to
> dismiss, the plaintiff must plausibly allege that:
> (1) defendants discriminated — or took an adverse
> employment action — against him, (2) because he has
> opposed any unlawful employment practice." *Vega* v.
> *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d
> Cir. 2015) (internal quotation marks omitted).

*Duplan* v. *City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

There is no "bright line to define the outer limits beyond which a

temporal relationship is too attenuated to establish a causal relationship"

between undertaking a protected act and a subsequent retaliation. *Gorman-

Bakos* v. *Cornell Coop. Extension*, 252 F.3d 545 (2d Cir. 2001). However, at

this stage of the proceedings, Plaintiff does not need to plead every part of a

*prima facie* case of retaliation, just enough facts for the claims to be plausible.

*See Williams* v. *N.Y.C. Hous. Auth.*, 458 F.3d 67, 71-72 (2d Cir. 2006); *accord

Vega*, 801 F.3d at 90.

### b.    Plaintiff's Has Adequately Alleged Retaliation

Plaintiff's claim for retaliation is broader than his hostile work

environment claim, as it encompasses not only his complaints regarding

Pichardo's anti-Semitic statements, but also his complaints regarding

Pichardo's treatment of his female co-workers. (*See* Pl. Opp. 16). Plaintiff

argues that he has pleaded that: (i) he opposed two unlawful practices (Am.

21

Compl. ¶¶ 36-37); (ii) his employer was made aware in his meeting with Dix and Paglialonga (*id.* at ¶ 37); (iii) he was terminated thereafter (*id.* at ¶ 52); and (iv) he was terminated in relation to these complaints (*id.* at ¶ 53).

The State Defendants primarily contest the fourth element, claiming there is no plausible connection between Plaintiff's reporting and his termination. (NY Br. 21). They argue that too much time (approximately 21 months) passed between the two events, and thus that there is insufficient temporal proximity to establish a plausible connection. (*Id.*). To this end, the State Defendants cite several recent Second Circuit and Southern District decisions for this principle:

> As the Second Circuit recently reaffirmed: "While we have not 'drawn a bright line to define the outer limits' of temporal proximity in the Title VII retaliation context, a ten-month period between the adverse action and the protected activity does not support an inference of causation." *N'Dama Miankanze Bamba* v. *Fenton*, No. 17-2870, 2018 WL 6331611, at *2 (2d Cir. Dec. 4, 2018) (quoting *Hollander* v. *Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990) (declining to find causal nexus between alleged retaliatory letter and protected activity where letter was written three months later)). *See also Chang* v. *Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) (holding that lapse of "almost one year" between' employee's complaint of discrimination and her termination "undermin[ed] any causal nexus based on temporal proximity"); *Woodworth* v. *Shinseki*, 447 Fed. App'x 255, 258 (2d Cir. 2011) (fifteen-month gap); *Yarde* v. *Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005)(six-month gap).

(NY Br. 22). Furthermore, the State Defendants emphasize the length of time between Plaintiff's complaint and his subsequent dismissal because it highlights another potentially valid, non-retaliatory reason for Plaintiff's

dismissal: DOL's belief that Plaintiff fabricated the original claims. (*See* NY Reply 10).

The Court agrees that Plaintiff has not plausibly alleged a causal connection between his complaint and termination based on temporal proximity alone. Plaintiff's argument, that "the lengthy procedural/investigatory measures undertaken by Defendants — which were based upon his complaints concerning Mr. Pichardo and appear to have extended from, the latest, April 2017 through to Mr. Kaplan's termination in October 2017 — [cannot] be held against him" (Pl. Opp. 17), seems to misconceive the standard. Plaintiff does not need to show that the delay was not his fault; rather, Plaintiff must allege that his termination was connected to his complaint. The lengthy interval between these events forecloses such an inference. The Court agrees that Plaintiff has failed to allege that the temporal proximity between his complaint and termination indicates a retaliatory motive.

However, the Court finds that Plaintiff has plausibly alleged a retaliatory motive in a different manner. "A plaintiff may assert causal connection through allegations of retaliatory animus, or else by circumstantial evidence, such as close temporal proximity between the protected activity and the retaliatory action." *Perry* v. *State of N.Y. Dep't of Labor*, No. 08 Civ. 4610 (PKC), 2009 WL 2575713, at *6 (S.D.N.Y. Aug. 20, 2009), *aff'd sub nom. Perry* v. *N.Y. Dep't of Labor*, 398 F. App'x 628 (2d Cir. 2010) (summary order). Here, Plaintiff has alleged that he made a complaint based on discrimination (Am. Compl. ¶¶ 36-37); that DOL accepted that complaint as true (*id.* at ¶ 40); and that DOL

23

then accused him of fabricating a complaint that it had already accepted as true in order to justify its termination of his employment (*id.* at ¶¶ 44-52). The Court must accept these allegations as true at this stage of the litigation. Accordingly, an assertion of close temporal proximity alone is unnecessary, because here DOL is alleged to have reversed its position regarding a complaint it had already accepted as true. This offers a stronger circumstantial case for a pretextual retaliatory firing than mere temporal proximity. If Plaintiff's version of events were accurate, DOL, with full awareness of the truth of his complaints, fired him on the pretext that he fabricated the complaints. The Court concludes that these allegations plausibly state a retaliatory motive for Plaintiff's termination. Plaintiff's retaliation claim therefore survives.

## CONCLUSION

For the foregoing reasons, Defendant Dix's motion to dismiss is GRANTED. The State Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's state and local law claims against all Defendants are dismissed for lack of jurisdiction pursuant to the Eleventh Amendment. Plaintiff's Title VII claims against Commissioner Reardon were withdrawn and are dismissed. The Clerk of Court is directed to terminate Defendants Reardon, Dix, Paglialonga, and Ben-Amotz from this action. Plaintiff's Title VII claims against DOL for hostile work environment and retaliation survive. The Clerk of Court is directed to terminate the motion at docket entries 58 and 61.

The Court observes that many of Plaintiff's claims seem to hinge on the existence of a letter from DOL that Plaintiff argues differs from the August 16

Letter.  If this letter is not produced in discovery, the Court is skeptical that Plaintiff's claim can survive further motion practice.

DOL is hereby ORDERED to file its answer on or before July 29, 2019. The parties remaining in this litigation are hereby ORDERED to submit a joint letter and proposed case management plan on or before August 5, 2019.

SO ORDERED.

Dated:      July 19, 2019
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge